Coolbroth, Appellant, *v.* Pennsylvania Railroad Company.

209    433
e 30 SC [1] 91
30 SC [3]417

209    433
f 34 SC [3]494

*Practice, C. P.—Trial—Reservation of question of law.*

A reservation which embraces a mixed question of law and fact is not a legal reservation of a question of law alone.

*Negligence—Railroads—" Stop, look and listen "—Grade crossings.*

Where the evidence is conflicting as to whether a person stopped at the best place to look out for danger before approaching a railroad crossing, the case must go to the jury.

*Negligence—Contributory negligence—Province of court and jury.*

The question of contributory negligence cannot be treated as one of law,

unless the facts and the inferences from them are free from doubt.   If there is doubt as to either the case is for the jury.

*Negligence—Contributory negligence—Burden of proof—Evidence.*

In an action to recover damages for personal injuries the burden is on the plaintiff to prove negligence on the part of defendant, and that this negligence caused the injury.   He is not bound to go further and prove that he did not contribute to the result by his own negligence; that burden is on the defendant, unless the evidence adduced by plaintiff discloses contributory negligence.

Argued April 19, 1904.   Appeal, No. 32, Jan. T., 1904, by plaintiffs, from order of C. P. Clearfield Co., May T., 1903, No. 58, entering judgment for defendant non obstante veredicto in case of Grace Coolbroth and Charles Coolbroth, her husband, v. Pennsylvania Railroad Company.   Before MITCHELL, C. J., DEAN, BROWN, POTTER and THOMPSON, JJ.   Reversed.

Trespass to recover damages for personal injuries.   Before GORDON, P. J.

The facts are stated in the opinion of the Supreme Court.

Defendant presented, inter alia, the following point :

First.  The court is respectfully requested to direct a verdict in favor of the defendant for the following reasons :

1. Because it appears by the testimony of plaintiff herself that the point where she stopped to look and listen was to the south side of the Irvin siding and before she got quite to the siding, which is shown by the testimony of her engineer, Mr. Moore, to have been over fifty-three feet along the sidewalk from the track where she was struck.

2. Because it appears by some of her witnesses who were a considerable distance from the train that they were able to see the train and did see it, and are able to state approximately the distance they were from it.

3. Because the plaintiff was not injured on the track, but just as she was about to step on the track before a locomotive, which is shown by uncontradicted testimony to have been equipped with a proper headlight.

4. Because it appears by the testimony on the part of the plaintiff that the box cars and the lumber pile were necessarily out of view after she passed the Irvin siding, and that there was no obstruction between the Irvin siding and the track

where she was struck, and that the distance between them along the sidewalk is forty-five feet.

5. Because the plaintiff was struck on the back, showing that she had her face away from the direction from which this train came.

6. Because the place at which she stopped over fifty-three feet from the track was shown by the testimony to have been a point where the view was obstructed; while on the ground she passed over after crossing the siding and in which she did not stop, the view was unobstructed for over 300 feet.

7. Because the testimony shows that at any point within the space from the Irvin siding to the track at which she was struck along the sidewalk there was an unobstructed view of the approaching train for several hundred feet; that immediately before stepping on the track she would have had a view of over 300 feet and this view would be widened in the direction from which she came.

8. Because there is no testimony upon the part of the plaintiff that no bell was rung or whistle sounded; the witnesses only stating that they did not hear such signals, and none of the witnesses are shown to have had any relation to the train which specially called their attention to the signals, and this testimony against the positive testimony of the engineer, fireman. and brakeman that the signals were given is insufficient to justify a finding by the jury that they were not given.

9. Because none of. the witnesses who testified on the part of the plaintiff in relation to the speed of the train are shown to have had any qualification or experience to enable them to judge of its speed, and it is testimony of such vague character as would be overborne by the positive testimony of the engineer, fireman, brakeman and conductor. and by the schedule of the train.

*Answer :* This point asks us to take the case from the jury, but in the view we take of it at this time we cannot do that, and we therefore refuse this point and will reserve the question for future consideration.

Verdict for Grace Coolbroth for $1,000 and for Charles Coolbroth for $2,000.

The court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*David L. Krebs,* of *Krebs & Liveright,* with him *Wm. Irvin Swoope,* for appellants.—The reservation was not in proper form: Clark & Thaw v. Wilder, 25 Pa. 314 ; Irvin v. Wickersham, 25 Pa. 316 ; Wilson v. Steamboat Tuscarora, 25 Pa. 317 ; Winchester v. Bennett, 54 Pa. 510 ; Wilde v. Trainor, 59 Pa. 439 ; Ferguson v. Wright, 61 Pa. 258 ; Buckley v. Duff, 111 Pa. 223 ; Henry v. Heilman, 114 Pa. 499 ; Casey v. Paving Co., 198 Pa. 348 ; Mayne v. Fidelity, etc., Co., 198 Pa. 490.

The court erred in holding as matter of law that the plaintiff Grace Coolbroth was guilty of contributory negligence : Kuntz v. New York, etc., R. R. Co., 206 Pa. 162.

The very difficulty with which the question seemed surrounded made submission of it to the jury imperative. The court held that it was not one-sided. The doubt with which his own mind was clouded upon the point made it error to determine the question of contributory negligence as matter of law : Kuntz v. Railroad Co., 206 Pa. 162; Doud v. Delaware, etc., R. R. Co., 203 Pa. 227 ; Bard v. Philadelphia & Reading Railway Co., 199 Pa. 94 ; McCusker v. Pennsylvania Railroad Company, 198 Pa. 540 ; Muckinhaupt v. Erie Railroad Company, 196 Pa. 213 ; Davidson v. Lake Shore & Michigan Southern Railway Co., 179 Pa. 227 ; McNeal v. Pittsburg & Western Railway Company, 131 Pa. 184.

*Thomas H. Murray,* of *Murray & O'Laughlin,* for appellee.—The reserved question was sufficient to support the judgment entered thereon : Williams v. Crystal Lake Water Co., 191 Pa. 98 ; Casey v. Paving Co., 198 Pa. 348 ; Mayne v. Fidelity, etc., Co., 198 Pa. 490.

This was a case for binding instructions for defendant company : Penna. R. R. Co. v. Mooney, 126 Pa. 244, 252 ; Hauser v. Central R. R. Co., 147 Pa. 440, 444 ; Myers v. B. & O. R. R. Co., 150 Pa. 386, 390 ; Holden v. Penna. R. R. Co., 169 Pa. 1, 16, 17 ; Hovenden v. Penna. R. R. Co., 180 Pa. 244, 246–251.

OPINION BY MR. JUSTICE DEAN, June 15, 1904 :

As this case is presented on the record we will have to re-

verse the judgment for these reasons : 1. The form of the
reservation is very unsatisfactory because, from the manner of
it, it does not clearly disclose the exact legal question re-
served.   But assuming that we might get around the in-
formality of the reservation and find that it is good in sub-
stance, then, 2. The reservation embraces a mixed question
of law and fact.   These are the facts as plaintiff avers them
and there was some evidence to sustain her averments :

" On the afternoon of the 29th of August she went from
her home in the central part of the borough of Curwensville
across the Susquehanna river and across the railroad of the
defendant company to visit a lady with whom she had busi-
ness pertaining to some of her work as a seamstress.

" She remained at this house during all the afternoon and
until after eight o'clock in the evening of the same day.   It
was quite dark when she started to return to her home, which
was distant between a quarter and a half a mile.   She re-
crossed the river on an open iron bridge and as she was about
the west end of the bridge, the end nearest the railroad, she
heard the whistling of a train.

" There being but few trains on this end of the railroad and
none due at this hour, by any schedule of trains, she was puz-
zled to know where to look for this train.

" She not only looked in the direction of Clearfield from
which direction it subsequently appeared a passenger train was
coming, and which was running two hours and a half behind
time but she also looked in the opposite direction, thinking it
might be a train coming from the region of Grampion—a point
north.

" When she reached the side track, which ran from the main
track across the street on which she was traveling toward
home to a mill that stood near the footwalk on which she was
walking, she stopped, looked and listened, but saw no train,
saw no headlight, nor the reflection of any light, heard no
whistle nor any bell.

" The night was dark, as shown not only by her own testi-
mony but also of other witnesses called in her behalf.   Just
beyond the defendant company's road, and at a higher eleva-
tion, an engine on the Buffalo, Rochester & Pittsburg Rail-
road was standing.

" At the trial of the cause, it appeared from the testimony that some cars were standing on the side track near the public road or street that to some extent obstructed the view of the main track. This obstruction so far as the cars are concerned was created by the defendant, but how long they had been standing there does not appear from any evidence ; whether they were run upon that side track that afternoon or evening does not appear.

" This obstruction of the view of the main track was something the plaintiff could not anticipate.

" From the point where she stopped and looked and listened she could see down the main track some considerable distance, and had the headlight of the engine been burning it would have surely appeared.

" From this point, seeing and hearing nothing, no bell being rung and no whistle blown, she proceeded to walk across this side track toward the main track about fifty-two feet distance, continually watching down the road to see if a train was approaching. Seeing nothing in that direction she turned to look in the opposite direction and as she stepped on the track she was struck by the engine and thrown about eighteen feet and very badly hurt."

We concede, that on the facts, taking them to be just as plaintiff alleges them, the case is a close one and we fully appreciate the difficulties of the learned judge of the court below in arriving at a correct conclusion on the point reserved, nevertheless, we think in entering judgment for defendant on the point he invaded the province of the jury. The court in entering judgment for defendant says : " The question raised by defendant's requests in their points for binding instruction and the nine reasons given therefor, which points on account of the reservation were refused," and then follows the decree for judgment non obstante veredicto. The defendant had presented nine written points for instruction ; the conclusion of each was, in effect, for a peremptory instruction to find for defendant because the facts stated in them were established by the evidence. Logically then, the judgment was an affirmation of all of them, and the substance of all of them is a request that the court shall as a matter of law pronounce the plaintiff guilty of contributory negligence. This affirmation is in direct

conflict with the court's instructions on the written request of plaintiff thus :

" 1. That if they believe and find from the testimony that the plaintiff stopped, looked and listened at a proper place and the best place from which to observe the approach of a train toward the State street crossing, then she was not guilty of contributory negligence, and if they further find from the evidence that the defendant company was negligent in approaching the crossing where the plaintiff was struck by the train, then the plaintiffs are entitled to recover, and the verdict of the jury must be for the plaintiff.

·  " That point is affirmed.    But we desire to explain, that you have no right to conclude that the plaintiff is not guilty of contributory negligence merely because she stopped, looked and listened.    It is proper to take that into consideration, but she might be guilty of contributory negligence notwithstanding that fact."

Which instruction was in law clearly correct, and the only question open is, whether there was any evidence of contributory negligence on the part of plaintiff, for on review, we must take the verdict as establishing the truth.    First, in his opinion on the reserved point and in his charge to the jury, the learned judge says, the burden was on the plaintiff to prove that defendant was negligent and that there was no contributory negligence on her part.    This was doubtless an inadvertent error, for the law does not impose on a plaintiff so heavy a burden. She is bound to prove negligence on the part of defendant and that this negligence caused her injury; she is not bound to go further and prove that she did not contribute to the result by her own negligence.    That burden is on defendant, unless the evidence adduced by her discloses contributory negligence. It may or may not do this ; if it do not, she is entitled to a verdict, unless the defendant then adduces evidence establishing her contributory negligence.    In most cases the question of contributory negligence is one of fact for the jury, though by no means always.    Where the facts are clearly established and the inference of negligence from them manifest, the court should peremptorily so instruct the jury ; but our latest case preceded by possibly one hundred others, Kuntz v. New York, etc., Railroad Company, 206 Pa. 162, says : " The question of

contributory negligence cannot be treated as one of law unless the facts and the inferences from them are free from doubt. If there is doubt as to either the case is for the jury."

In passing upon the question of contributory negligence in his opinion on the reserved point, the learned judge almost, if not altogether, in his own language identifies this case as one for the jury.   He says :

"It is held that the stopping must be at a place where an approaching train may be seen or heard.   That it will not do for a pedestrian crossing to say that he stopped and then stepped in front of a moving engine and was injured.   That in such case the legal inference would be either, that he did not stop, look and listen, or that having done so he both saw and heard the approaching engine.   He must comply with the legal injunction and then upon passing over the danger point, keep his eyes and ears open.   Does the plaintiff's case here properly measure up to the legal requirement ?   The question is not entirely one-sided or free from difficulty, yet after careful consideration, but with considerable reluctance, I have come to the conclusion that it does not."

It seems to us that if the case was not one-sided that it had two sides, and if not free from difficulty, was not clear, but was one of doubt and belonged to the jury.   But assuming that the learned judge did not mean exactly what he said, was there clearly but one inference and that one contributory negligence to be drawn by the jury ?   Plaintiff says in her testimony that as she passed over the bridge towards the crossing she heard a whistle of some kind ; then walked on to the Susquehanna House corner ; she then looked down the track which was unobstructed for 400 feet ; she then passed on to a point south of the mill siding where she stopped, looked and listened ; proceeding on from this point she looked both ways, neither saw nor heard a train, and just as she was about to step on the track was struck by the bumper of a locomotive and injured.   There was positive evidence that she stopped, looked and listened when approaching to cross the railroad ; while there is considerable evidence tending· to show that the point where she stopped was not the best place for a sight of a coming train, the distance on the track which would be shown to the eye from that point would be greatest ; then because of a curve in

the track and an embankment as the railroad is approached from that point, the view of it is narrowed to seventy or ninety feet; there was evidence that it was dark; that no whistle was blown or bell rung; that plaintiff continued to look and listen until she was struck.  It is argued, with much force by appellee, that if she had looked before she made the last step she would not have been struck; but in reply it is urged that a train might have been coming on the track from either direction; the one that injured her was running at high speed; it was visible only a few feet from the crossing; it gave no warning and as caution required her to look at the tracks both north and south and while at the very moment her head was turned in the opposite direction the locomotive came upon her.  We cannot certainly say this was not so; some of the facts are doubtful on the contradictory testimony; the inferences drawn from them may to some minds seem unreasonable, to others reasonable.  That the most serious wounds on plaintiff's person were on the back does not conclusively show that she was not listening or looking for a silent locomotive, but only that at the instant it struck her she was not looking in the direction from which it came.

As to whether she stopped at the best place to look out for danger when she approached the crossing, the evidence was contradictory.  Under such evidence we have more than once held that the question must go to the jury.

From a careful consideration of the law and the testimony we are of opinion that the reserved points embraced a mixed question of law and fact and therefore was not a legal reservation of a question of law alone.

Judgment reversed and judgment entered on verdict for plaintiffs.