PER CURIAM, October 21, 1907:
Rule absolute.

---

# First National Bank of Wampum *v.* Western Union Telegraph Company, Appellant.

*Negligence—Telegraph company—Banks and banking—Forgery—Contributory negligence—Proximate cause—Evidence.*

In an action by a bank against a telegraph company to recover damages for a loss sustained by the payment of a forged draft, it appeared that the plaintiff paid to a stranger the amount called for by the draft, which purported to be drawn by a Verona bank on a New York bank. Plaintiff had previously received from the Verona bank a forged letter advising it of this draft, and requesting plaintiff to cash it, and also had previously received a forged telegram purporting to come from Verona in confirmation of the letter. The telegraph company had no office at Verona. The plaintiff was not a correspondent of the Verona bank, and there was no legal duty upon it to pay the draft. Plaintiff had a bank directory, which, if examined, would have shown that the cashier's name signed to the letter and telegram, was wrongly spelled. The telegram if read without reference to the letter, was unintelligible. The man to whom the payment was made was not identified. *Held,* that the court committed error in not directing a verdict for the defendant.

Argued May 15, 1907. Appeal, No. 68, April T., 1907, by defendant, from judgment of C. P. Lawrence Co., Sept. T., 1904, No. 51, on verdict for plaintiff in case of First National Bank of Wampum v. Western Union Telegraph Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for a loss alleged to have been caused by a forged telegram. Before PORTER, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* among others was in refusing binding instructions for defendant.

*J. S. Ferguson*, with him *E. G. Ferguson* and *B. A. Winter-nitz*, for appellant.—A telegraph company is not an insurer of the correct transmission of messages intrusted to it. It is only bound to make use of ordinary care, attention and skill: Grinnell v. W. U. Tel. Co., 113 Mass. 299 ; N. Y. & Wash. Printing Tel. Co. v. Dryburg, 35 Pa. 298.

As a general rule negligence is undoubtedly a question of fact, and as such is for the determination of the jury. That is, negligence being a breach of the duty to exercise reasonable care under the circumstances, it is for the jury to consider all the surrounding circumstances and say whether the defendant's act or omission was or was not violative of this obligation : McCully v. Clarke & Thaw, 40 Pa. 399 ; Beck v. Hood, 185 Pa. 32.

The connection between the negligence complained of and the injury suffered must be by a natural and unbroken sequence, without intervening efficient causes, so that but for the negligence of the company the injury would not have occurred. It must not only be a cause, but it must be the proximate cause ; that is, the direct and immediate cause of the injury : Jones on Telegraph and Telephone Companies, sec. 195 ; Fairbanks v. Kerr, 70 Pa. 86 ; Lowery v. W. U. Tel. Co., 60 N. Y. 198.

*Wylie McCaslin*, with him *J. Norman Martin*, for appellee.— A telegraph company is liable in damages to the recipient of a message for the misfeasance of their agent: Tobin v. W. U. Tel. Co., 146 Pa. 375 ; Harris v. W. U. Tel. Co., 9 Phila. 88 ; McCord v. W. U. Tel. Co., 1 L. R. A. 143 ; Baldwin v. U. S. Tel. Co., 45 N. Y. 744 ; New York & Wash. Printing Tel. Co. v. Dryburg, 35 Pa. 298 ; W. U. Tel. Co. v. Richman, 19 W. N. C. 569.

The defendant is not entitled to binding instructions unless the evidence clearly shows lack of negligence on its part or contributory negligence of the plaintiff: Hogan v. West Mahanoy Township, 38 W. N. C. 105.

When decision depends not merely on the existence of certain facts, but on the conclusions, inferences or deductions arising from them respecting which there is no fixed standard of judgment, it is for the jury, even when there is no dispute as to the facts: Menner v. D. & H. Canal Co., 7 Pa. Superior Ct. 135 ;

Bensing v. Railway Co., 9 Pa. Superior Ct. 142; Kepple v. Torpedo Co., 7 Pa. Superior Ct. 620; Vannatta v. Central R. R. of N. J., 154 Pa. 262; Smith v. B. & O. R. R. Co., 158 Pa. 82; Davidson v. Traction Co., 4 Pa. Superior Ct. 86; Delaware, etc., R. R. R. Co. v. Jones, 128 Pa. 308; Ryan v. Ardis, 190 Pa. 66; Breunniger v. Railroad Co., 9 Pa. Superior Ct. 461; Conyngham v. Motor Co., 15 Pa. Superior Ct. 573; Allen v. Warwick Township, 9 Pa. Superior Ct. 507.

OPINION BY ORLADY, J., October 7, 1907:

The plaintiff recovered a judgment in the court below on the following facts, which are undisputed.

The plaintiff, a national bank at Wampum, received by due course of mail on August 31, 1903, between 9 and 10 o'clock A. M., a letter purporting to have been mailed at Verona, Allegheny county, Pa., and on the stationery of the First National Bank of Verona, viz. :—

" No. 4877.

R. D. Ellwood, Pres.        VERONA, PA., Aug. 31, 1903.
H. W. Armstrong, V. Pres.
Wm. E. Barger, Cashier.

The First National Bank of Verona, Pa.
W. H. Groves, Cashier, First National Bank, Wampum, Pa.

" Dear Sir:—I have issued draft on Hanover National Bank, N. Y. (No. 12,873), in favor of C. E. Armstrong calling for $387.00. Please honor on presentation and advise me by return mail. I will confirm this letter to you by telegram.

" Yours truly, Wm. E. Barger, Cashier."

About 2 P. M. of the same day, the telegraph operator of the defendant company at Wampum telephoned, and the next day delivered to the cashier of the plaintiff bank a message as follows :—

" Western Union Telegraph Company.

Received at ———, August 31, 1903.

Dated Verona, Pa., 31

To W. H. Grove, First National Bank, Wampum, Pa.

" Confirming my letter August 31, Hanover National Bank, N. Y., No. 12,873, C. E. Armstrong three eighty seven is O. K.

" Wm. E. Barger, Cashier."

Within an hour after the receipt of the telegram, a man, with whom the cashier was not acquainted, came to the bank and presented a draft in the following form :—

" No. 12873.   $387.          Verona, Pa., August 31st, 1903. The First National Bank of Verona, Pa.

" Pay to the order of C. E. Armstrong three hundred and eighty-seven dollars.

Wm. E. Barger, Cashier.
To the Hanover National Bank, New York."

As testified to by the cashier of the plaintiff bank—" He presented this paper—he came into the bank and to the window, and introduced himself as C. E. Armstrong.   And he then took the paper and went to the desk and indorsed it and came back and asked me, if I didn't get a telegram from Mr. Barger at Verona, and I didn't answer him for a little while, and I said, 'yes, I had no evidence that you are C. E. Armstrong.'   He said, ' Well, Mr. Barger had informed him that he would send this telegram, that he wouldn't have any trouble in getting the money on it.'   I noticed the draft was dated on the same day he was there and asked him ' why he didn't get the money and bring it with him.'   He said, for two reasons : He had got this draft after banking hours on Saturday, and Mr. Barger told him all bank's business that they do after banking hours goes over to the next regular day for doing business, and he didn't care to carry the money."   " Q. You told him you didn't know him ?   A. Yes, sir.   I didn't know him only by the telegram.   Q. Did you ask him where he lived ?   A. No, I didn't.   Q. Did you ask him what his business was ?   A. I don't know that I asked him that.   I asked him what he was doing in that neighborhood.   He told me he was buying poultry and produce."

The draft was paid by the plaintiff bank to the unidentified stranger, and soon thereafter it was learned that the letter, telegram and draft were forgeries, and that the defendant company did not have an office at Verona, Pa.   The Wampum bank did not know of the bank at Verona, and never had any business transactions with it, but did have a directory giving its location and officials, which, on examination, showed that the cashier's name was spelled Bargar instead of Barger on the

letter and telegram. A proper notice was served on the defendant within sixty days, and this suit brought to recover damages sustained by reason of the defendant neglecting " to exercise that degree of care and caution which the nature of its business demanded." The act of negligence charged against the defendant " was in delivering, as genuine, a message authorizing and directing the paying of money by the person to whom it is addressed, purporting to have been sent from a place where the company did not have an office, and from which place said company did not transmit the message," as stated and affirmed in the plaintiff's second point.

The transaction was out of the ordinary course of business, and, taking the case as of the moment when the draft was cashed, it must be conceded that the telegram, if read without reference to the letter, would be unintelligible, and if the letter had not been received the draft would not have been paid. Neither of these communications, taken separately, could be said to be the inducing cause of the loss. As the draft was directed to the Hanover Bank of New York there was no legal duty on the Wampum bank to honor and cash it, and, in so doing, the latter bank volunteered to do a gratuitous act. It was not a correspondent of the Verona bank; did not then know the name of its cashier, and hence could not know his signature. The bank directory at hand was not consulted to identify the name of the Verona bank's cashier, and when subsequently examined it showed a material difference in the way the name was spelled. Further, the payment was made to an unidentified stranger on the faith of a letter which obviously bore an improbable date, and also on a telegram which had been orally transmitted by telephone. On the trial there was no dispute in regard to the facts, and after refusing to enter a nonsuit, the court unqualifiedly affirmed the following points submitted by the defendant: " Fourth, that if the jury find that the plaintiff paid the draft in evidence, relying both upon the letter and the telegram in evidence, the plaintiff is not entitled to recover. Fifth, that even if the telegraph company should be found to be in default in delivering the telegram in question, yet if its default was made mischievous to the plaintiff by the operation of some other intervening cause, to wit: the letter, the defendant company cannot be held.

liable for the loss. Ninth, that if the jury find that in the payment of the draft the plaintiff was guilty of contributory negligence the plaintiff cannot recover," but refused the tenth, " that under all the evidence the verdict must be for the defendant."

The law does not undertake to hold a person who is chargeable with a breach of duty towards another with all the possible consequences of his wrongful act. It, in general, takes cognizance only of those consequences which are the natural and probable result of the wrong complained of, and which in the language of Pollock, C. B., in Rigby v. Hewitt, 5 Exch. 240, may reasonably be expected to result, under ordinary circumstances, from the misconduct. Every injury is preceded by circumstances, if any one of which had been wanting the injury would not have happened. In some sense, therefore, each is a cause of the injury, but to fasten legal responsibility for the injury upon every person whose wrongful act, however remote therefrom, had contributed to bring about a situation or condition which made the injury possible, would be an impracticable rule, and one which if enforced would in most cases inflict a punishment wholly disproportionate to the wrong: Lowery v. Western Union Tel. Co., 60 N. Y. 198; s. c., 19 Am. Rep. 154. Although it may be clear that except for the wrong of the defendant the loss would not have happened, yet there must be a direct connection between the wrong complained of and the resulting injury; in the contemplation of law they must stand together as cause and effect so as to give a right of action against the wrongdoer and make him chargeable with the loss. It is not every breach of duty that will be a sufficient ground on which to base an action, for while it may be an inducing cause which brings about a loss or injury, yet it may not be the direct, natural or proximate cause of such injury. The proximate cause of the injury may be one of the results of the breach of the operator's duty, but this may be influenced by other intermediate causes which would affect the operators breach of duty, although being merely a remote or indirect cause of the injury, and which fact would relieve the company from liability: Jones on Telegraph & Telephone Companies, sec. 441.

Where the effect of the evidence is merely to establish that

there are two independent causes, either one of which may have been the proximate cause of the injury, the burden is upon the plaintiff to show that the cause for which the defendant is responsible was the one which produced the injury : Ahern v. Melvin, 21 Pa. Superior Ct. 462. And where there is an alleged proximate cause admittedly dependent upon another in producing the injury, and which other cause is in no way induced by the defendant, the evidence should be clear that the one relied upon by the plaintiff was the sole proximate cause. Such could not be urged in this case, inasmuch as the letter and telegram are necessarily joined as inducing causes of the plaintiff's loss.

Nor is it enough to say that the telegram materially contributed in producing the loss, and that without it the forged letter might not have caused it. How much or in what degree the cashier would have been influenced by the one forgery, supplemented by the blandishments of the forger, is purely speculative.

If the plaintiff, or party injured, by the exercise of ordinary care might have avoided the consequences of the company's negligence, but did not, the case is one of mutual fault and the law will neither cast all the consequences upon the company, nor will it attempt any apportionment thereof : Cooley on Torts, 674. The fact remains undisputed, that the cashier of the plaintiff ignored all business precaution, and volunteered without any inquiry, to deal with an unknown. He cannot admit his contributory negligence (the facts being undisputed the law so measures his conduct) and then recover when such negligence contributed to his loss.

While it is true that contributory negligence cannot be treated as one of law, unless the facts and inferences to be drawn from them are free from doubt (Kuntz v. New York, etc., Railroad Co., 206 Pa. 162), yet where the facts are clearly established and the inferences of negligence from them manifest, the court should peremptorily so instruct the jury : Gramlich v. Wurst, 86 Pa. 74 ; Lehigh Valley R. R. Co. v. Greiner, 113 Pa. 600 ; Delaware, etc., Railroad Co. v. Cadow, 120 Pa. 559 ; Coolbroth v. Penna. R. R. Co., 209 Pa. 433 ; Cohen v. Phila. & Reading R. R. Co., 211 Pa. 227 ; Bannon v. Penna. R. R. Co., 29 Pa. Superior Ct. 231. There is no question

as to the credibility of witnesses—there is no controversy as to the facts they narrate. Is there any doubt as to the natural and reasonable inferences to be drawn from their undisputed testimony? Is there room for drawing inferences founded upon reason or common sense to justify such credulity in a transaction between a banker and a stranger, and particularly so when the banker is not under any duty to act at all? The undisputed testimony establishes facts and circumstances which would reasonably and naturally arouse inquiry and suspicion in the mind of a person of ordinary prudence and intelligence in a like situation. The law requires that such warnings shall be heeded, and if ignored the sufferer is without remedy. Contributory negligence is matter of defense, and the onus probandi is on the defendant unless the plaintiff's own evidence sufficiently discloses the fact of contributory negligence. In that event the plaintiff cannot recover, and the defendant is relieved from the necessity of proving what has already been established by the plaintiff's evidence: Baker v. Gas Co., 157 Pa. 593; Sopherstein v. Bertels, 178 Pa. 401.

Taken in its most favorable light the plaintiff's loss was due to its own disregard of care, and there were no facts nor inferences to be reasonably drawn from them to justify a jury in finding that the bank did not rely on both the letter and the telegram, or that the forged telegram was not made mischievous to the bank by the intervention of the letter. Where a case is submitted to a jury upon clearly insufficient evidence, such as no court should sustain a verdict upon, it is our plain duty to reverse: Cauffman v. Long, 82 Pa. 72. The defendant's tenth point—that under all the evidence, the verdict must be for the defendant, should have been affirmed.

The judgment is reversed.