## Rotzell v. Tittman.

*Automobiles—Negligent driving—Approaching intersecting streets—Act of June 30, 1919.*

1. Under the Act of June 30, 1919, P. L. 678, where the paths of two approaching vehicles cross at the intersection of public streets, the driver at the left must give way unless so far in advance of the other as to afford reasonable time to clear the crossing and thus, in all probability, avoid a collision.

2. Where it appears from the evidence that plaintiff was first at the intersection of two streets which crossed at right angles and that the position of defendant's car on the intersecting street was such that defendant should have permitted plaintiff to exercise his right to cross, plaintiff is entitled to go to the jury.

3. It was not encumbent upon plaintiff to assume that defendant would neglect his duty in the premises; whether or not conditions were such as to prevent a man of ordinary prudence from attempting to cross in front of defendant's car was a question for the jury.

Motion to take off non-suit. C. P. No. 5, Phila. Co., March T., 1924, No. 621.

*George V. Strong,* for plaintiff; *H. P. Felger,* for defendant.

Rotzell v. Tittman.

MARTIN, P. J., June 28, 1926. — Plaintiff sued to recover damages for injuries caused by a collision of his motor with that of defendant.

Plaintiff testified that, about 7 o'clock on Dec. 30, 1923, going over the north drive of the Roosevelt Boulevard in a westerly direction, he was going into 9th Street, which crossed the boulevard at right angles, when he noticed a car coming; he continued over, taking it for granted that the approaching car on 9th Street was going to stop—"because he was far enough from him to stop; and all of a sudden he shot forward." Plaintiff put on his brakes, "but being a wet night and slippery," plaintiff just went in front of defendant's car and hit it about the front fender on the side in the front.

Plaintiff testified that he was about one car and a half length in on 9th Street when he first saw defendant's car about ten or fifteen feet down on 9th Street, in from the south curb-line of the boulevard about fifteen feet; that he continued to watch defendant and saw him pull out and try to beat plaintiff across;. that defendant's car shot around plaintiff, who immediately put on the brakes, but it was too late on account of the slippery streets and he could not stop. He further testified: "Defendant was so far away that I never did think he was going to attempt to cross the street." Plaintiff was asked: "When you reached the intersection of 9th Street and the boulevard, what did you see when you reached that intersection?" He replied: "Looking over—driving along and looking to see if there was anything there, anything ahead of me or to the side of me or anything like that." He was asked: "Did you see anything as you reached the intersection?" His reply was: "I saw this car." On cross-examination, he stated that defendant had not seen him until plaintiff had got out ten or fifteen feet. He was asked: "When you were in that position and having seen the car for the first time, you saw Mr. Tittman's car then about to enter and cross the north driveway of the boulevard?" The answer was: "No, he was not entering; he was down away from me." "Q. How far away? A. Ten or fifteen feet away from the curb-line. Q. When you first saw him then, I understand your testimony is that you thought he would stop and you continued to go across, is that right. A. I was so far away I took it for granted he would never attempt to cross. The minute I saw him put on gas to speed up his car, then I immediately tried to stop. Q. When you first saw Tittman's car you thought it would stop, so you didn't attempt to stop your car when you first saw him? A. When I saw he was not going to stop, I immediately put on the brake. I saw the car coming and didn't attempt to stop, then I attempted to stop." He further stated that he stopped after he had run ten or maybe five feet; that he did not skid, but his brakes would not hold on the slippery street. During cross-examination, counsel for defendant stepped off a distance in the court-room and asked plaintiff to indicate when he first saw defendant's car, how far he would say it was from his car at the time. When the witness requested counsel to stop, he answered: "I would judge about twenty-five feet."

Plaintiff testified that the speed of his car when approaching 9th Street was twelve or fifteen miles.

This testimony was corroborated in part by his wife, who testified that, as the car entered 9th Street, she saw the car of defendant going up 9th Street after plaintiff's car had entered 9th Street; that defendant's car was back from the north drive of the boulevard and had not reached the side of the boulevard. She confirmed the statement of plaintiff as to the manner in which he applied the brakes.

When the testimony offered on behalf of plaintiff was closed, a non-suit was entered, which counsel has moved to take off.

Rotzell *v.* Tittman.

In Weber *v.* Greenebaum, 270 Pa. 382-385, it was said that the Act of June 30, 1919, P. L. 678, "means that where the paths of two approaching vehicles cross at the intersection of public streets, the driver at the left must give way, unless so far in advance of the other as to afford reasonable time to clear the crossing, and thus, in all probability, avoid a collision."

There was testimony that defendant, approaching from the left, was not in advance of plaintiff, but that plaintiff, coming from the right, was in advance of defendant, and had the right of way, and that defendant should have afforded him reasonable opportunity to clear the crossing and thus have avoided the collision.

The failure of defendant to control his car so that plaintiff could cross 9th Street in safety was evidence of negligence on the part of defendant in driving his car at too high a rate of speed or not passing in the rear of plaintiff's car: Great Bear Spring Co. *v.* Fischman, 82 Pa. Superior Ct. 502-504.

The law governing the duty of defendant was declared in McGlinchey *v.* Steigerwald, 73 Pa. Superior Ct. 520-522, as follows: "It is the duty of one vehicle approaching a crossing where another vehicle is first at the crossing to give it an opportunity to clear the crossing."

In Simon *v.* Lit Bros., 264 Pa. 121, the trial judge was of opinion that it was plaintiff's duty to observe an approaching truck before reaching a position in which he was unable to bring his car to a stop in time to avoid a collision, and held that his failure to do so convicted him of contributory negligence. On appeal, it was decided that, "in thus ruling, the trial judge placed upon plaintiff a higher burden than he was bound to assume, under the decisions of this court. It is the duty of the driver of an automobile in approaching a street-crossing to have his car under control and observe if vehicles are approaching on the intersecting street, and, in case a car or truck is first at the crossing, that vehicle must be given an opportunity to cross the intersecting street and due care used to avoid collision. The driver of the motor-car first reaching the crossing has the right to assume the driver of an automobile approaching on an intersecting street will do so at a moderate speed with his car under control. In other words, the driver of the car is not required to anticipate and guard against the want of ordinary care on the part of another." The judgment of non-suit was reversed.

In Black *v.* Mark, 273 Pa. 138, 139, it was said: "The law applicable to accidents at street intersections is clear and well settled. It is the duty of the driver of an automobile in approaching a crossing to have his car under full control and observe if vehicles are approaching on the intersecting street, and in case a car or truck is first at the crossing, that vehicle must be given an opportunity to cross the intersecting street, and due care used to avoid collision. . . . If both cars reach the crossing at the same time, the one approaching from the right is entitled to the right of way and the other must, if necessary, stop and permit the one having the right of way to pass in safety." That case was submitted to the jury, a verdict rendered for plaintiff, and the court held that, while the burden was on the plaintiff to prove negligence on the part of defendant, plaintiff was not bound to go further and prove that he did not contribute to the result by his own negligence; but that burden is on the defendant, unless the evidence adduced by plaintiff discloses contributory negligence: Coolbroth *v.* Pennsylvania R. R. Co., 209 Pa. 433.

In Jester *v.* Phila., Balt. & Wash. R. R. Co., 267 Pa. 10-12, the opinion in Virgilio *v.* Walker & Brehm, 254 Pa. 241, was quoted with approval, in which it was said: "We have carefully examined the testimony; it presents a very close case. After giving the plaintiffs the benefit of every inference fairly

deducible from the evidence, we are led to the conclusion the case should have been submitted to the jury. We have frequently said a non-suit can be entered only in clear cases when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to plaintiff, could determine in his favor the controlling issue involved."

There is evidence in the instant case that plaintiff was first at the intersection and that the position of defendant's car was such that he should have permitted plaintiff to exercise his right to cross 9th Street. Having failed to do so, defendant was guilty of negligence. It was not encumbent upon plaintiff to assume that defendant would neglect his duty in the premises; whether or not the conditions were such as to prevent a man of ordinary prudence from attempting to cross in front of defendant's car should be submitted to the jury.

And now, to wit, June 28, 1926, the motion to take off the non-suit is allowed.